# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

STEPHANIE DOYLE,            )
                            )
         Plaintiff,         )
                            )
vs.                         )    Case No. 13-CV-696-TCK-PJC
                            )
WAL-MART STORES, INC.,      )
                            )
         Defendant.         )

## OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 16).

## I. Factual Background

Construed favorably to Plaintiff, the record contains the following facts. Plaintiff and her boyfriend were shopping at the Wal-Mart store located at 81st and Lewis on the evening of November 23, 2012, which was "Black Friday." According to the store manager, Black Friday is the busiest shopping day of the year, and he hires extra employees for this day. Certain employees working the afternoon and evening shift on Black Friday are charged with "zoning," which is straightening the counters, picking things up off the floor, and helping customers. On the evening in question, there was one sales associate assigned to the eight toy aisles and one extra employees assigned to the "action" aisle, or the aisle that most people walk down in the toy department.

Plaintiff was shopping on one of the toy aisles, while her boyfriend was elsewhere pushing the cart. The aisle had a white tile floor. Plaintiff's boyfriend appeared at the end of the aisle where she was shopping, and she walked toward him. While walking down the aisle, Plaintiff was looking ahead at her boyfriend and talking to him. She tripped over a skateboard, which she thinks was green. According to Plaintiff, she "propelled a little forward and then fell back," and the skateboard rolled down the aisle. Plaintiff did not see the skateboard before she tripped on it. Once on the floor,

she noticed that there were "boxes and maybe some other toys and stuff" in the aisle where she tripped.

On September 24, 2013, Plaintiff sued Wal-Mart in Tulsa County District Court, alleging that Plaintiff's fall and injuries "were the direct result of [Wal-Mart's] negligence which caused a hidden trap or snare or pitfall" and seeking damages in excess of $75,000. (Pet. ¶¶ 3, 5.) On October 22, 2013, Wal-Mart removed the action to federal court. Wal-Mart now moves for summary judgment.

## II. Discussion

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.*, 449 F.3d 1106, 1112 (10th Cir. 2006). The Court resolves all factual disputes and draws all reasonable inferences in favor of the non-moving party. *Id.* However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party seeking to overcome a motion for summary judgment must also make a showing sufficient to establish the existence of those elements essential to that party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-33 (1986).

Under Oklahoma law, "there are three elements to a claim for negligence: 1) a duty owed by the defendant to protect the plaintiff from injury; 2) a failure to perform that duty; and 3) injuries to the plaintiff which are proximately caused by the defendant's failure to exercise the duty of care." *Smith v. City of Stillwater*, 328 P.3d 1192, 1200 (Okla. 2014). "The cornerstone of a negligence action is the existence of a duty, and the issue of whether a duty exists is a question of law." *Id.* Wal-

Mart moves for judgment based on Plaintiff's inability to show that it owed her a duty under the circumstances.

Plaintiff possessed the status of an invitee on Wal-Mart's premises. "A shopkeeper owes an invitee a duty of reasonable care, and an invitee who is a business visitor is entitled to that care which would make the premises safe for the invitee's reception." *Zagal v. Truckstops Corp. of Am.*, 948 P.2d 273, 274 (Okla. 1997). An owner owes an invitee a duty to keep the premises "reasonably safe from hidden dangers, traps, snares, and the like." *Id.* "An owner is under no legal duty to warn an invitee of a danger which is obvious and should be observed in the exercise of ordinary care." *Id.* This is known as the "open and obvious" danger doctrine, and it precludes a finding of duty. The question of whether a dangerous condition is open and obvious is a fact question, rather than a legal question. *Phelps v. Hotel Mgmt., Inc.*, 925 P.2d 891, 894 (Okla. 1996). Therefore, the question must be submitted to the jury if "reasonable minds could differ" as to whether a particular danger is open and obvious and therefore should have been observed in the exercise of ordinary care. *Id.*; *Zagal*, 948 P.2d at 275; *Simpson v. Wal-Mart Stores, Inc.*, No. 99-5082, 2000 WL 228308, at *1 (10th Cir. Feb. 29, 2000) (applying Oklahoma law).

If a danger is actually observed by the plaintiff, courts generally conclude that reasonable minds could not differ as to whether the danger is open and obvious. *See, e.g., Kastning v. Melvin Simon & Assocs., Inc.*, 876 P.2d 239, 240 (Okla. 1994) (affirming grant of summary judgment where the plaintiff saw the puddle in front of the toilet and was cautious in attempting to leave toilet stall); *Billings v. Wal-Mart Stores, Inc.*, 837 P.2d 932, 933 (Okla. Civ. App. 1992) (affirming grant of summary judgment where the plaintiff saw a speed bump before hitting it). However, if a danger is observable, but not actually observed by the plaintiff, the surrounding facts and circumstances must

3

be considered. *Zagal*, 948 P.2d at 275 ("[T]he characteristic of an item as being observable . . . cannot, by itself, require that item to be declared as a matter of law an open and obvious danger."); *Simpson*, 2000 WL 228308, at *1 (same).

Numerous courts have found that reasonable minds could differ as to whether a danger was open and obvious where the danger was observable, but not actually seen by the plaintiff for various reasons. *Simpson*, 2000 WL 228308, at * 2 (affirming denial of summary judgment where the plaintiff did not see orange cone in Wal-Mart entry area because she was carrying an infant); *Zagal*, 948 P.2d at 274-75 (reversing grant of summary judgment where the plaintiff did not see cardboard box in aisle of truck stop because she was looking ahead and box was partially under a shelf); *Roper v. Mercy Health Ctr.*, 903 P.2d 314, 315 (Okla. 1995) (reversing grant of summary judgment where the plaintiff did not see light fixture protruding above sidewalk due to pedestrian traffic); *Spirgis v. Circle K Stores, Inc.*, 743 P.2d 682, 684-85 (Okla. Civ. App. 1987) (reversing grant of summary judgment where the plaintiff did not see pothole in convenience store parking lot due to pedestrian and vehicle traffic). In contrast, one court concluded that reasonable minds could not differ as to whether a bright orange extension cord was an open and obvious danger in a Wal-Mart light-fixture aisle, where the plaintiff claimed she did not see the cord due to "blinding lights." *See Southerland v. Wal-Mart Stores, Inc.*, 848 P.2d 68, 69 (Okla. Civ. App. 1993).

In this case, Plaintiff testified that she did not actually observe the skateboard. Thus, facts and circumstances are relevant to determining whether it presented an open and obvious danger. Defendants compare the skateboard (which Plaintiff thinks was green) to the orange extension cord in *Southerland*, arguing that reasonable minds could not differ as to whether it was an open and obvious danger on the white tile floor. However, Plaintiff testified that, after she fell, she noticed

4

boxes, toys, and other items laying in the aisle. This testimony is supported by the fact that she was shopping on Black Friday, when aisles are frequently messy. The Court concludes that summary judgment is not proper because reasonable minds could differ as to whether a concealed danger was created by the skateboard in the toy aisle, given that Plaintiff was shopping on Black Friday and that other toys and boxes may have been in the toy aisle. *See Zagal*, 948 P.2d at 274-75 (holding that reasonable minds could differ as to "whether a concealed danger was created by a cardboard box . . . partially under a shelf and partially obstructing an aisle in a location where the plaintiff, familiar with the premises, tripped over it and fell just after entering the door and turning a corner"). *Southerland*, the case principally relied upon by Wal-Mart, is distinguishable because (1) the trial court viewed a photograph of how the aisle looked when the incident occurred, and (2) the plaintiff did not contend there was anything blocking her view of the extension cord. *See id.* ("The trial court viewed the photographs and correctly concluded reasonable people could not differ over the fact that the 'bright orange' cord was easily visible (despite the allegation of blinding light), and patently obvious to any person walking toward it . . . ."). The Court finds that the issue must be presented to a jury.

Defendant's Motion for Summary Judgment (Doc. 16) is DENIED.

SO ORDERED this 15th day of September, 2014.

_/s/ Terence Kern_
**TERENCE KERN**
**United States District Judge**

5